# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

CLYDE DEWAYNE FOX,                    )
                                      )
    Plaintiff,                    )
                                      )
    v.                            )        CAUSE NO.: 1:04-CV-141-TS
                                      )
TIMOTHY A. PITTINGER and              )
CITY OF COLUMBIA CITY, INDIANA,       )
                                      )
    Defendants.                   )

## OPINION AND ORDER

The Plaintiff, Clyde Dewayne Fox, sued Timothy A. Pittinger, a Columbia City Police Officer, and the City of Columbia City, for injuries he incurred during his arrest on April 9, 2002. The Plaintiff contends that the Defendants violated state laws and the United States Constitution. This matter is before the Court on the Defendants' Motion for Summary Judgment, in which they ask the Court to grant judgment in their favor on all the Plaintiff's claims.

## BACKGROUND

On April 2, 2004, the Plaintiff filed a seven-count Complaint against Officer Timothy Pittenger and the City of Columbia City in Whitley Circuit Court. In his first and second causes of action, the Plaintiff asserts claims against Officer Pittinger for intentional battery and for negligent and reckless use of excessive force. In Count Three of his Complaint, the Plaintiff sues Officer Pittinger under 42 U.S.C. § 1983 alleging that he violated his constitutional rights. For his fourth cause of action, the Plaintiff alleges that the City of Columbia City was negligent in hiring and failing to properly train Officer Pittinger. Counts Fives and Six are also against the City for the negligence, gross negligence and recklessness of its agent, Officer Pittinger, including his use of

excessive force. The Plaintiff again uses § 1983, in Count Seven, to allege a constitutional due process violation against the City for the acts of Officer Pittinger as its agent.

On April 14, 2004, the Defendants removed the Complaint to this Court pursuant to 28 U.S.C. § 1441 and § 1446. On May 25, 2004, the Defendants filed their Answer and on May 26, 2004, filed an Amended Answer to comply with Northern District of Indiana Local Rule 10.1.

On May 5, 2005, the Defendants moved for summary judgment on the Plaintiff's claims. On June 20, 2005, the Plaintiff responded and on June 27, the Defendants replied.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving

party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the

district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at

325. When the non-moving party would have the burden of proof at trial, the moving party is not

required to support its motion with affidavits or other similar materials negating the opponent's

claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994);

*Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the

moving party may, if it chooses, support its motion for summary judgment with affidavits or other

materials and thereby shift to the non-moving party the burden of showing that an issue of material

fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548,

558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin*

*Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

　　　Once a properly supported motion for summary judgment is made, the non-moving party

cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed.

R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of

Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise

provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial."

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to

demonstrate a genuine issue of fact, the non-moving party must do more than raise some

metaphysical doubt as to the material facts; the non-moving party must come forward with specific

facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317,

322 (7th Cir. 1992). Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

## STATEMENT OF FACTS

At about 3:15 a.m. on April 9, 2002, Columbia City Police Officers Timothy Pittenger and Chad Miller stopped the Plaintiff's truck on the west edge of Columbia City because Officer Pittenger believed that the Plaintiff was driving with a suspended license.[1] The Plaintiff expressed his belief that Officer Pittenger had "set him up" and directed several profanities at him. The smell of alcohol, the Plaintiff's loud and slurred speech, his bloodshot eyes, his mood swings, and his use of obscenities toward the officers, led them to believe that the Plaintiff had been drinking. When asked how much he had to drink, the Plaintiff responded that it was none of Officer Pittenger's f*** ing business. Officer Pittenger asked the Plaintiff to get out of his truck. The Plaintiff complied and

---

[1] Officer Pittenger had confiscated the Plaintiff's license during a previous, unrelated stop.

also agreed to a PBT test, which indicated that his blood alcohol level was .13. The Plaintiff had been playing cards and drinking beer from 8:00 p.m. to 3:00 a.m.

The Plaintiff knew the names of the officers who stopped him but did not know the name of another officer who arrived on the scene. He approached the other officer, Officer Ken Smith, in an attempt to read his name tag and badge number. Officer Smith perceived the Plaintiff's actions as aggressive and pushed him back with his arm. The Plaintiff again expressed his belief that he thought he was illegally stopped. He also called Officer Pittinger several names, including "Dickhead." (Pf.'s Dep. at 43–44.)

Officer Pittinger handcuffed the Plaintif without incident and determined that he should be transported in a caged car for officer safety. During this time, the Plaintiff's wife was on her way home from work when she noticed her husband's truck and stopped her own vehicle alongside the road. The Plaintiff became agitated and attempted to go talk to her, but officers held him back. Officer Pittinger and Officer Smith began to escort the Plaintiff to a squad car to take him to the station. Officer Miller walked behind them. While they were walking, the Plaintiff slipped in such a manner that he kicked Officer Pittinger in the upper right leg.[2] Officer Pittinger believed that the Plaintiff intended to kick him in the groin area and responded by placing both hands on the Plaintiff, one on his chest and one underneath his shoulder, and flipping him back over his leg, causing him to land hard on the asphalt. As the Plaintiff was going down, Officer Pittinger went down to the ground on one knee. Another officer held the Plaintiff's head to cushion it from the ground. The Plaintiff's head hit the ground, but not that hard because the officer cushioned it. (Pf.'s Dep. at 43.)

---

[2] The road was sloped down about forty-five degrees and its surface was wet. The Plaintiff testified in his deposition that he stumbled or slipped and that Officer Pittinger thought it was the Plaintiff's intention to kick him, but "[w]hether it was or not, I have no idea. I don't recollect that." (Pf.'s Dep. at 42.) A jury found the Plaintiff guilty of battery on Officer Pittinger as a result of the kick. (Pf.'s Dep. at 55.)

The Plaintiff got the wind knocked out of him and believes that he was unconscious for a little while. Officer Pittinger contends that taking a suspect to the ground to control him is a tactic he was taught at the Indiana Law Enforcement Academy and that it is one of the lowest levels of force that can be used.

In his deposition, the Plaintiff asserted that, in addition to the take-down, he must have been dragged on the ground because the skin on his elbows was peeled off and his shirt was torn up. However, he does not recollect being dragged. (Pf.'s Dep. at 58.) Officer Pittinger stated in his Affidavit that neither he nor any other officer dragged the Plaintiff on the ground. (Pittinger's Aff., ¶ 11.) The Plaintiff does not dispute Officer Pittinger's statement in his response to the Defendants' Motion for Summary Judgment.[3]

When the Plaintiff did not respond to questions regarding his pain and appeared to have

---

[3] In fact, the Plaintiff does not set forth, "with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated." N.D. Ind. L.R. 56.1(a). Rather, the Plaintiff's response includes a list of genuine issues, without citation to the record, in response to each of the Defendants' legal arguments. For example, the Plaintiff lists the following: "Did Officer Pittinger employ excessive force against Mr. Fox on April 10, 2002?" This is not helpful to the Court because the purpose of Rule 56.1 is not to alert the Court to the legal issues in the case. In *Waldridge v. American Hoechst Corp.* 24 F.3d 918 (7th Cir. 1994), the court stated that the factual statements required by local rules such as N.D. Ind. L.R. 56.1

> are not merely superfluous abstracts of the evidence. Rather, they are intended to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own..

*Id.* at 923.

The Plaintiff has failed to provide such a roadmap. The Plaintiff has not provided specific factual assertions, supported by citations to the record, to controvert the Defendants' Statement of Material Facts. According to Local Rule 56.1(b), "the court will assume the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motions, as supported by the deposition, discovery responses, affidavits and other admissible evidence on file." Because the Plaintiff has not controverted Officer Pittinger's statement that he was not dragged on the ground, the Court assumes that he was not. The admissible evidence indicates that the take-down maneuver was the only force employed against the Plaintiff on April 9, 2002.

difficulty breathing, Officer Pittinger called for a medic. Officer Smith held the Plaintiff's head until EMS arrived. The Plaintiff was taken to the emergency room where he was found to have two broken ribs. On April 17, 2002, the Plaintiff's wife took pictures of the bruising on his back and elbows. The Plaintiff contends that, on April 19, ten day after his arrest, his bowel movement contained mostly dried blood. He learned that he had a polyp in his colon that had been cut. The Plaintiff submits that his internal bleeding was the result of the take-down.

The Plaintiff was arrested for operating a vehicle while impaired, battery on a police officer, disorderly conduct, resisting law enforcement, and driving while his license was suspended. He pleaded guilty to operating a vehicle while impaired and was convicted by a jury of resisting arrest and battery on Officer Pittinger.

## DISCUSSION

### A. Counts One and Two: State Law Claims Against Officer Pittinger

The Plaintiff claims that Officer Pittinger is liable under Indiana state law for battery and for negligent use of excessive force. Officer Pittinger argues that an employee of a governmental agency cannot be personally liable under Indiana's Tort Claim Act (ITCA) for tortious conduct committed within the course and scope of his employment. He contends that he was acting within the scope and course of his employment with the Columbia City Police Department when he took the actions alleged in the Complaint. The Plaintiff does not contest that Officer Pittinger was acting within the scope of his employment when he escorted the Plaintiff to the patrol car. He asserts, however, that once the Plaintiff attempted to kick the Officer, "the officer is no more than a private citizen who has the right to defend himself." (Pf.'s Resp. at 3.) He contends that whether Officer Pittinger was

acting within the scope of his employment is a question for the trier of fact.

Indiana Code § 34-13-3-5(b), provides that a suit "alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." The Indiana Supreme Court has construed this section to mean that a governmental employee has a complete defense under the ITCA if the action occurred within the scope of his employment. *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003) (explaining that, pursuant to the ITCA, governmental employees who act within the scope of their employment are immune from liability); *see also City of Gary v. Conat*, 810 N.E.2d 1112, 1118 (Ind. Ct. App. 2004) (reiterating "that I.C. § 34-13-3-5(b) should be interpreted as standing for the proposition that a plaintiff cannot sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of his employment"). This policy "allows government employees acting in the scope of their employment the freedom to carry out their duties without the fear of litigation." *Bushong*, 790 N.E.2d at 472. Whether certain acts of an employee were within the scope of employment may be determined as a matter of law. *Id.*

"To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (citing Restatement (Second) Agency § 229 (1958)). Even tortious acts may fall within the scope of employment. *Id.*; *see also Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind. 1993) (stating that an employee's tortious act may fall within the scope of his employment "if his purpose was, to an appreciable extent, to further his employer's business") (quoting *Stropes v. Heritage House Childrens Ctr.*, 547 N.E.2d 244, 247 (Ind. 1989)).

In *Celebration Fireworks, Inc. v. Smith*, the court determined that a fire chief's comments

about a fireworks retailer to its potential landlord, including allegations that it did not pay its bills, were within the scope of the fire chief's employment. 727 N.E.2d at 453. The court first determined that the fire chief was on public time, performing a function that was central to the position he held—conducting a safety inspection. *Id.* at 453. Next, the court considered whether the acts causing the plaintiff's loss, the fire chief's statements, were incidental to the authorized conduct, or, to an appreciable extent, to further his employer's business. The court reasoned that the act causing the loss consisted of three sentences that were part of a longer discussion and that splitting out these sentences so as to place the fire chief outside the scope of employment would put too fine a point on the matter. *Id.* at 454. It would threaten employees' use of independent judgment to carry out their duties. *Id.*

Just as in *Celebration Fireworks*, Officer Pittinger was on public time and performing a function central to police work, arresting an intoxicated driver, when he took the acts causing the Plaintiff's loss. The act of taking the Plaintiff to the ground after he kicked Officer Pittinger was incidental to the authority to arrest the Plaintiff and furthered the City's law enforcement functions. Officer Pittinger's duties to enforce laws and arrest violators do not end merely because the person being taken into custody resists arrest. The Plaintiff's attempt to designate his battery on Officer Pittinger as the point in which he ceased acting within the scope of his employment does not have any rational or legal basis.

Because Officer Pittinger's response to the Plaintiff's aggression, which occurred while he was being escorted to a police car, was an act carried out within the scope of his police department employment, the Plaintiff is barred from suing Officer Pittinger in tort under the ITCA. Officer Pittinger is entitled to summary judgment on Counts One and Two of the Complaint.

**B. Counts Four, Five, and Six: State Law Claims Against the City**

In Count Four of his Complaint, the Plaintiff sues the City of Columbia City for negligence. He alleges that Officer Pittinger's actions "resulted from the carelessness and negligence of defendant City of Columbia City, its agents, servants, employees, or other representatives, in hiring and failing to properly train defendant Timothy A. Pittinger."[4] In Count Five of his Complaint, the Plaintiff claims that the City is liable for the negligent conduct of its employee, Officer Pittinger, including his use of excessive force. Count Six differs from Count Five only in that Officer Pittinger's conduct is referred to as "grossly negligent and reckless."

**(1) *Count Four—Negligent Hiring and Failure to Train***

a. *Negligent Hiring and Retention*

"Indiana has long recognized a cause of action for negligent hiring and retention of an employee." *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994). To prevail on this theory, the plaintiff must show that the defendant employer negligently retained an employee knowing that the employee was in the habit of misconducting himself. *Id.* The only reference in the Plaintiff's response brief that touches on this standard is his claim that the City was aware that Officer Pittinger violated "numerous constitutional rights of private citizens" and his "reputation in the community is that of a tyrant to be feared and not a police officer who is you[r] friend." (Pf.'s Resp. at 6.) The Plaintiff cites his own Affidavit in support of these statements. In his

---

[4] In their Motion for Summary Judgment, the Defendants analyze Count Four as a § 1983 failure to train claim against the City. However, the Plaintiff did not refer to § 1983 or to the deprivation of a constitutional right in Count Four of the Complaint. The Plaintiff's response to the Defendant's Motion for Summary Judgment on Count Four also lacks any reference to § 1983 or federal law. Therefore, the Court will analyze the claim under state law.

Affidavit, the Plaintiff states: "I am not the first person to be victimized by Officer Pittinger. Officer Pittinger broke into the house of Mr. Kevin Ewing with a warrant on probable cause. Joseph Schroeder was brutally beaten because he was suffering from a diabetic shock. Also, Mr. Bumbaugh and Todd Simmers were victims of Officer Pittinger's violent temper." (Pf.'s Aff., ¶ 23.)

The Court cannot consider the Plaintiff's Affidavit statements because they do not satisfy the requirements of Federal Rule of Civil Procedure 56(e). *See Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998) (a court may only consider those parts of an affidavit that satisfy the requirements of Rule 56(e)). Rule 56(e) requires that affidavits supporting or opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." A party responding to a motion for summary judgment, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Here, the Plaintiff's Affidavit is unsupported by specific facts and does not demonstrate personal knowledge. In fact, the Plaintiff admits in his deposition that he has no personal knowledge regarding the circumstances of the other individuals he claims Officer Pittinger used force against. (Pf.'s Dep. at 67–68.) The Plaintiff has not presented any admissible evidence to suggest that the City hired, or retained, Officer Pittinger with the knowledge that he violated citizens' rights.

b. *Failure to Train*

The Plaintiff also contends that the City should be liable for failing to properly train Officer Pittinger. He argues that the extent of his injuries proves that Officer Pittinger was not properly

trained. The Plaintiff is asking the Court to make a presumption it cannot make. The Plaintiff has not presented any evidence that the injuries he suffered were the result of inadequate training, rather than, for example, poor execution of the take-down technique, or the Plaintiff's predisposition to injury because of his existing physical condition.[5] *Cf. Erwin v. County of Manitowoc*, 872 F.2d 1292, 1298 (7th Cir.1989) (noting in § 1983 failure to train case that "[e]ven adequately trained officers sometimes err, and such error says little about their training program or the legal basis for liability").

By contrast, the Defendant has presented ample evidence that Officer Pittinger was provided training, both as a new recruit and on an ongoing basis. Officer Pittinger states that he completed basic training at the Indiana Law Enforcement Academy, where he was taught how to take a suspect to the ground to control him. This tactic was reinforced in his training from the police department's physical tactics trainer. He also states that he took a course in Officer Survival/Tactical Handcuffing through the Northeast Indiana Law Enforcement Council.

The Plaintiff has not provided any evidence that this training was inadequate. In fact, at one point in his response to the Defendants' Motion for Summary Judgement, the Plaintiff states that "[e]ither Officer Pittinger did not use the 'lowest level of force' or he used it incorrectly. The take down procedure taught by the academy does not result in the injuries [sustained by the Plaintiff.]" (Pf.'s Resp. at 5.) *See also* Answer to Interr. No. 7 ("Defendants violated the standards set forth in the Indiana Law Enforcement Academy Physical Tactics Manual.") Given the confidence the Plaintiff puts in the Academy's training, the City cannot be said to act negligently when it relies on the Academy to properly train new recruits during basic training, as it did with Officer Pittinger.

---

[5] In fact, the Plaintiff testified in his deposition that he was unaware of the polyp in his colon that ruptured and caused bleeding. (Pf.'s Dep. at 59.) The Plaintiff was 68 years old at the time of the incident.

In addition to questioning Officer Pittinger's take-down technique, the Plaintiff argues that he was not "properly instructed on the technique of escorting a handcuffed subject surrounded by three officers so as to prevent harm both to the officers and the subject." (Pf.'s Mem. at 7.) The Plaintiff makes this statement without any citation to the record. In his Designation of Evidence, however, the Plaintiff submits the testimony of Jack Barbour, which was proffered to the state court, but not admitted into evidence, during the state's battery trial against the Plaintiffs. This testimony, however, does not shed any light on Officer Pittinger's training or the City's training policies. Moreover, what Officer Pittinger actually did while arresting the Plaintiff, and what he was trained to do, are two different matters. To hold the City negligent, the Plaintiff must have some evidence going to the latter. He does not present any such evidence. The Plaintiff makes no attempt to prove that the basic training at the Academy, or any other training Officer Pittinger received, did not include escort techniques or that the techniques learned were inadequate.

The Plaintiff's failure to train claim fails as a matter of law and the City is entitled to summary judgment on Count Four of the Plaintiff's Complaint.


**(2) *Counts Five and Six—Liability of City for Negligence of its Employee***

Governmental entities are subject to liability for the torts committed by their employees unless one of the exceptions in the ITCA applies. *Lake County Juvenile Ct. v. Swanson*, 671 N.E.2d 429, 439 (Ind. Ct. App.1996). The basis for the City's claim of immunity arises from section 34-13-3-3(8) of the ITCA. This section provides immunity to "a government entity or an employee acting within the scope of the employee's employment" from liability for losses resulting from the "enforcement of . . . a law . . . unless the act of enforcement constitutes false arrest or false

imprisonment." I.C. § 34-13-3-3(8). Here, the Court has already determined that Officer Pittinger was the City's employee acting within the scope of his employment at the time of the arrest. The Plaintiff has not alleged false arrest or false imprisonment. Nor is there any dispute that Officer Pittinger was enforcing a law when he stopped the Plaintiff, placed him in handcuffs, escorted him to a police car, and responded to what he perceived as resistence.

The parties, however, dispute one point—whether section 34-13-3-3(8) immunizes a police officer's actions even when they amount to excessive force. In *City of Anderson v. Davis*, 743 N.E.2d 359, 365 (Ind. Ct. App. 2001), the Indiana Court of Appeals recognized that "[i]t is unclear if a police officer enforcing the law in the scope of his employment would be exempt from immunity under the ITCA if his actions amounted to excessive force, or were illegal in some other way." The court was not required to resolve that issue, but it did footnote that the Indiana Supreme Court explicitly disavowed the public duty versus private duty test upon which it had previously based the excessive force exception to immunity. *Id.* at 365 n.4 (citing *Quakenbush v. Lackey*, 622 N.E.2d 1284, 1291 (Ind. 1993); *Kemzey v. Peters*, 622 N.E.2d 1296, 1297 (Ind. 1993); *Benton v. City of Oakland City*, 721 N.E.2d 224, 230 (Ind. 1999)). The Court also pointed out that the ITCA itself does not provide an explicit immunity exemption for excessive force or other illegal acts. On the face of the statute, the only exceptions to the granting of immunity are for false arrest and false imprisonment. *Anderson*, 743 N.E.2d at 365 n.4; I.C. § 34-13-3-3(8); *see also Hollingsworth v. City of Crawfordsville,* 2003 WL 21180437, at *4 (S.D. Ind. Mar. 28, 2003) (stating that the Indiana Tort Claims Act barred any state law claim against the defendant police officers and their employer, other than for false arrest or false imprisonment). "The interpretation of the ITCA to include a free standing illegality or excessive force exception, without any explicit support in the Act itself, would

14

appear to run afoul of the supreme court's admonition in *Benton* that 'it is the legislature, and not the courts, that is in the best position to determine the nature and extent to which governmental units in Indiana should be insulated from tort liability.'" *Anderson*, 743 N.E.2d at 365 n.4 (citing *Benton*, 721 N.E.2d at 232).

The Defendant argues that Indiana courts have left unanswered the question of whether immunity applies to police actions that amount to excessive force. Because the distinction between public and private duties that first supported an excessive force exception has been abolished, and because the only statutory exceptions to granting immunity for enforcement of laws is for false arrest and false imprisonment, the Court finds that the City is entitled to immunity, regardless of whether Officer Pittinger's acts constituted excessive force.[6] The City is entitled to summary judgment on Counts Five and Six of the Complaint.

## C. Count Three: Section 1983 Claim Against Officer for Excessive Force

The Plaintiff's third cause of action is a § 1983 claim against Officer Pittinger for depriving him of his constitutional rights. Section 1983 provides a cause of action against government employees who, acting under color of law in their official capacity, violate the constitutional rights of another. 42 U.S.C. § 1983. A claim that a law enforcement officer used excessive force in the course of an arrest is analyzed under the Fourth Amendment's reasonableness standard. *Graham v. O'Connor*, 490 U.S. 386, 395 (1989). The issue for this Court is "whether the officer['s] actions were 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Brownell v. Figel*, 950 F.2d 1285, 1292 (7th Cir.

---

[6] Moreover, as will be discussed later, Officer Pittinger's actions did not amount to excessive force.

1991) (citing *Graham*, 490 U.S. at 397). Relevant considerations include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Of course, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Thus, courts must examine the reasonableness of the actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

Law enforcement officers are entitled to a defense of qualified immunity in actions against them founded upon the United States Constitution or federal law. A police officer will be entitled to immunity when a reasonable police officer could have believed that his conduct was constitutional in light of clearly established law and the information he possessed at the time. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Frazell v. E.K. Flanigan*, 102 F.3d 877, 886 (7th Cir. 1996).

Under United States Supreme Court precedent, the analysis of a qualified immunity defense requires a two-step inquiry. First, a court must answer the threshold question whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, assuming that a plaintiff is able to establish a constitutional violation under a favorable view of the facts, "the next, sequential step is to ask whether the right was clearly established." *Id.* In other words, a court must consider whether the law clearly established that the officer's conduct was unlawful in the

16

circumstances of the case. *Id.*

Here, Officer Pittinger knew that the Plaintiff was drunk, had yelled obscenities at the officers and accused them of setting him up, had approached Officer Stevens in an aggressive manner, had tried to go to his wife despite officers holding him back, and had kicked him in the leg. Even before the Plaintiff kicked him, Officer Pittinger determined that he posed a risk to officer safety—he was handcuffed and a caged car was going to be used for transport. It was not unreasonable for Officer Pittinger, making a split-second decision about the risk the Plaintiff posed, to decide to take the Plaintiff down to the ground after the Plaintiff kicked him. Officer Pittinger knew the Plaintiff was angry and believed that he engaged in a physically aggressive act. Whether it was really the Plaintiff's intent to kick Officer Pittinger is beside the point.  *See* Pf.'s Aff., ¶ 13 ("We had not taken very many steps when I stumbled.") Officer Pittinger was justified in believing the Plaintiff intended just such a result. (In fact, a jury determined beyond a reasonable doubt that the Plaintiff did intend to batter Officer Pittinger.) He was also justified in believing that taking the Plaintiff to the ground was a reasonable response to ensure that the Plaintiff did continue to resist and threaten officer safety. The take-down did not violate the Plaintiff's constitutional rights.

The Plaintiff insists that the inquiry does not end here. The Plaintiff argues that because the take-down resulted in "two broken ribs, a large bruise on the Plaintiff's back, a ruptured colon, large scrapes on his elbows, and internal bleeding," more than the lowest level of force take-down was applied. (Pl.s' Mem. at 5.) The problem with the Plaintiff's argument is that the facts claimed and supported by admissible evidence support the Defendants' position that only the take-down maneuver, and not some additional force, was used to control him. There is no credible evidence to suggest that anything other than the take-down caused these injuries, all of which, although not

17

necessarily incurred in every take-down, appear consistent with being flipped on your back onto hard pavement. A party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir.2001). Other than the speculation the Plaintiff offered up in his deposition that he was dragged along the ground, the Plaintiff does not even submit what "more" was done to him; and even the dragging claim was not pursued in response to the Defendant's Motion for Summary Judgment.

The undisputed facts before this Court support the conclusion that Officer Pittinger's take down was a reasonable and justified response to the situation and that no reasonable jury could find for the Plaintiff. Thus, the Court is not required to conduct any further qualified immunity analysis and Officer Pittinger is entitled to summary judgment on Count Three of the Complaint.

**D. Count Seven: Section 1983 Claims Against the City of Columbia City**

In Count Seven of his Complaint, the Plaintiff asserts that the City is liable under § 1983 for the illegal acts of its agent, Officer Pittinger. The United States Supreme Court held in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), that municipalities and other local governmental bodies are "persons" within the meaning of § 1983. "[T]o prevail on a *Monell* claim, the plaintiff must establish (1) that he suffered a constitutional injury, e.g., he was a victim of excessive force by a police officer, and (2) that the city authorized or maintained a custom of approving the unconstitutional conduct." *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994) (following holding in *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite

beside the point"); *see also Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998) (dismissing § 1983 claim against county after concluding that individual correctional officer did not violate the constitution); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 856, 596–97 (7th Cir. 1997) ("Having decided that the officers did not violate the Constitution, we must conclude that neither the City nor Police Chief . . . can be held liable for  Mr. Phillips' death.").

The City of Columbia City was sued only because the Plaintiff believes it is legally responsible for Officer Pittinger's actions. But if Officer Pittinger inflicted no constitutional injury on the Plaintiff, it is "inconceivable" that the City could be liable to the Plaintiff. *Heller*, 475 U.S. at 799. No genuine issue of material facts exists and the City is entitled to judgment as a matter of law on Count Seven.


## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [DE 20] is GRANTED. Judgment will be entered in favor of the Defendants, Officer Timothy Pittinger and the City of Columbia City, and against the Plaintiff, Clyde DeWayne Fox.

SO ORDERED on July 21, 2005.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

19